[Cite as *State v. Moore*, 2014-Ohio-5135.]

**[Please see vacated opinion at 2014-Ohio-819]**

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99788**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JOHN MOORE, JR.**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND MODIFIED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-00-392440-A

**BEFORE:**   Stewart, P.J., S. Gallagher, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**   November 20, 2014

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, OH    44103


**ATTORNEYS FOR APPELLEE**

Heaven DiMartino
Special Prosecutor
Michael Cody
Assistant Prosecuting Attorney
Summit County Safety Building
53 University Avenue
Akron, OH    44308

ON RECONSIDERATION[1]

MELODY J. STEWART, P.J.:

**{¶1}** Defendant-appellant John Moore and his codefendant, Lamar Chaney, robbed the Hard Rock Café in May 2000. Two female employees in the office were held at gunpoint and subsequently bound with duct tape. The two men escaped with approximately $14,000 in cash taken from a safe. After their identities were discovered, Moore, Chaney, and two other codefendants (employees of the restaurant who were said to have aided and abetted in the crime) were charged with two counts of kidnapping with firearm specifications and one count of aggravated robbery with firearm specifications.

**{¶2}** Chaney, who by all accounts, masterminded the robbery and carried the gun, pleaded guilty and received concurrent nine-year prison terms on each count, without any firearm specifications. Moore, who was not armed and was described by one of the victim's as having shown some compassion during the robbery, went to trial and received a prison term of ten years on each count, to run consecutively to each other and to a three-year firearm specification, for a total of 33 years.[2]

**{¶3}** Moore has filed three appeals to this court prior to the current one.[3] Relevant to this appeal, in his third appeal, disturbed by the unexplained disparity between the sentences given to the codefendants and the court's failure to conduct a "proportionality analysis," we

---

[1] The original announcement of decision, *State v. Moore,* 8th Dist. Cuyahoga No. 99788, 2014-Ohio-819, released March 6, 2014, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

[2] One of the other codefendants pleaded guilty to attempted aggravated robbery, without a firearm specification, during his trial and was sentenced to two years in prison. The other codefendant was acquitted by a jury.

[3] For a detailed history, *see State v. Moore*, 8th Dist. Cuyahoga No. 95106, 2012-Ohio-1958.

remanded for resentencing. *Moore* at ¶ 120. A newly-assigned judge resentenced Moore to eight years on each count, to run consecutively to each other and consecutive to the three-year firearm specification, for a total prison term of 27 years. On appeal from resentencing, Moore complains that the court erred by imposing a prison term that was inconsistent with the one given to Chaney and otherwise disregarded our mandate on appeal to conduct a proportionality review.[4]

I

**{¶4}** This appeal forces us to confront some unfortunate realities of Ohio's criminal sentencing scheme.

**{¶5}** The General Assembly has the sole authority to "define, classify, and prescribe punishment for offenses committed in Ohio." *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 12. Consistent with that authority, the General Assembly has given sentencing judges absolute discretion in balancing the need to "protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A).

**{¶6}** There is no mechanism in place to permit appellate review of discretionary sentencing decisions because the General Assembly seems to have made clear that appellate

---

[4] Moore also assigns as error that the court failed to correct certain inaccuracies in the presentence investigation report and that the court failed to merge allied offenses of similar import for sentencing. We summarily reject Moore's argument relating to the presentence investigation report because the trial court accepted every one of Moore's corrections to the inaccuracies contained in the report and there is no evidence the trial court relied on any of the inaccurate statements. *See State v. Caudill*, 5th Dist. Ashland No. 06 COA 42, 2007-Ohio-6175, ¶ 21-22.

We likewise reject Moore's attempt to reassert on appeal allied offenses claims that were addressed and overruled in the prior appeal. That issue is res judicata. *State v. Castro*, 8th Dist. Cuyahoga No. 97541, 2012-Ohio-2206, ¶ 7.

All other assignments of error not directly addressed in this opinion are moot under App.R. 12(A)(1)(c).

courts cannot review sentencing decisions for an abuse of discretion. *See* R.C. 2953.08(G)(2). However, the Ohio Supreme Court has continued to apply an abuse of discretion standard for appellate review. *See State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 62-63 (Lanzinger, J., dissenting). And despite there being no mention of the phrase "meaningful review" contained in Title 29 of the Revised Code, the Supreme Court has stated that "[t]he legislature crafted the sentencing statutes in a manner that mandates individual consideration of each offense during sentencing and allows meaningful review of the sentence for each offense individually on appeal." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 20.

{¶7} The result is an internally contradictory sentencing scheme: the legislature wants sentencing judges to impose the minimum sanction necessary to accomplish the purposes and goals of felony sentencing, but gave sentencing judges complete discretion in choosing terms within a statutory range and told appellate courts that they cannot review sentencing decisions for an abuse of discretion. As written, appellate sentencing review is barely existent. To be sure, appellate courts can review sentencing decisions for errors of law, *see* R.C. 2953.08(A)(4), but those errors are a mere sliver in the sentencing pie (for example, sentences that are outside the statutory range or disregards mandatory terms). When it comes to decisions involving the sentencing judge's discretion, we arguably have no authority at all to review them.

{¶8} For an example of this kind of limitation on appellate review, consider the following hypothetical with two codefendants who have identical criminal backgrounds. With equal culpablity and conduct in committing an offense, they are convicted of three, first-degree felonies. Defendant 1 is sentenced to the three-year minimum on each count, to be served concurrently for a total of three years in prison; defendant 2 is sentenced to the 11-year maximum

on each count, to be served consecutively for a total of 33 years in prison. The sentences are within the applicable range for first-degree felonies, so they are not contrary to law in this regard. As long as the sentencing judge indicated that the relevant statutory factors were considered and the applicable statutory findings made, on what grounds could an appellate court review those sentences? It seems that the statutory scheme would require us to affirm the sentences because they were imposed as part of the sentencing judge's discretion. But given the facts of the hypothetical, it is difficult to see how anyone could agree that the sentences were appropriate, much less consistent or that 33 years for one defendant was the least restrictive sanction when the equally culpable defendant received just a fraction of the time for the same conduct.

{¶9} The case before us serves as an example of the problem with appellate review of criminal sentences. Moore and Chaney were codefendants, acting in concert. Chaney pleaded guilty to all three of the charged offenses, minus the gun specifications, and received a concurrent prison sentence of nine years; Moore elected to go trial and received consecutive sentences totalling 27 years in prison. While Chaney could reasonably expect a reduced sentence for the offenses because he pleaded guilty, the fact remains that his actions in the commission of these offenses were more egregious than Moore's actions, so the large disparity in the sentences raises questions for appellate review.

{¶10} The difference in the two sentences in this case is the result of the court running Moore's sentences consecutively. To impose consecutive sentences, the trial court had to make certain findings, one of which is that consecutive sentences were not disproportionate to the seriousness of Moore's conduct in the commission of the offenses and to the danger he posed to the public. The court made that finding, but the record does not support it.

II

{¶11} Moore asserts several assignments of error arguing that the length of his sentence does not accomplish the purposes of felony sentencing because it was inconsistent with the sentence given to his codefendants, particularly Chaney.

A

{¶12} The General Assembly, acting within its sole discretion "to allow or not to allow [an appeal from a judgment of conviction] * * * on such terms and conditions as * * * the legislature seems proper," *Luff v. State*, 117 Ohio St. 102, 157 N.E. 388 (1927), paragraph four of the syllabus, grants a criminal defendant the right to challenge a sentence on the basis that it is "contrary to law." R.C. 2953.08(A)(4). In the context of criminal sentencing, the phrase "contrary to law" has been interpreted to mean "illegal" in the sense that the sentence is outside the statutory limits, *see Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 15, or that the court failed to engage in certain mandatory considerations before imposing sentence. *See State v. Bonds*, 8th Dist. Cuyahoga No. 100481, 2014-Ohio-2766, ¶ 6.

{¶13} There is no question that the sentences that the court ordered Moore to serve were within the applicable statutory range for each particular degree of felony. On that basis, the sentences on each individual count were not contrary to law. *See State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

B

{¶14} The court also stated that it considered all factors and guidance required by law.

{¶15} The "purposes" of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). Those purposes are achieved by sentences that are

"reasonably calculated" to be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."  R.C. 2929.11(B).

**{¶16}** The court's sentencing entry states that it "considered all factors of the law."  This court has held that the court fulfills its obligations under R.C. 2929.11(B) by stating that it considered all relevant sentencing factors.  *See State v. Kamleh*, 8th Dist. Cuyahoga No. 97092, 2012-Ohio-2061, ¶ 61.   It follows then that Moore's sentence cannot be deemed contrary to law due to a failure of the trial court to consider the purposes and goals of felony sentencing contained in R.C. 2929.11(B).

**{¶17}** Moore argues that the court failed to ensure that his sentence was "consistent" and "proportionate" to Chaney's sentence.   In so arguing, Moore treats consistency and proportionality as though they are the same.   They are not.   For purposes of R.C. 2929.11(B), "consistency" relates to the sentences in the context of sentences given to other offenders; "proportionality" relates solely to the punishment in the context of the offender's conduct (does the punishment fit the crime).   Moore's brief complains that the codefendant Chaney received a far-shorter sentence.   However, "that fact alone does not require a finding that the trial court erred in its sentencing decision. * * * [A] sentence is not contrary to law because the trial court failed to impose a sentence that is the same as another offender who committed similar conduct." *State v. Graham*, 12th Dist. Warren No. CA3013-07-066, 2014-Ohio-1891, ¶ 15, citing *State v. Lee*, 12th Dist. Butler No. CA2012-09-182, 2013-Ohio-3404, ¶ 13, and *State v. Isreal*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 73.   This argument of Moore's  is one of consistency, not proportionality.

**{¶18}** When we consider consistency in sentencing for purposes of R.C. 2929.11(B), we do so on the basis of each individual count. *See Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, at ¶ 8 ("Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time[.]"). And as often acknowledged by courts throughout the state, consistency is not synonymous with uniformity. *See State v. Black*, 8th Dist. Cuyahoga No. 100114, 2014-Ohio-2976, ¶ 12; *State v. Micomonaco*, 12th Dist. Butler No. CA2011-07-139, 2012-Ohio-5239, ¶ 49; *State v. Hall,* 10th Dist. Franklin No. 09AP-302, 2009-Ohio-5712, ¶ 10.

**{¶19}** The disparity between the sentences given to Moore and Chaney is not the result of Moore receiving more time on each individual count than Chaney received. In fact, Moore received eight years on each count; Chaney received nine years on each count. For this reason alone, Moore cannot argue that his sentences were inconsistent with Chaney's sentences.

III

**{¶20}** Although Moore incorrectly conflated consistency and proportionality when arguing that his sentence was inconsistent with the sentence given to Chaney (a mistake routinely made and discussed in appellate courts throughout the state), his argument raises the issue of whether his consecutive sentences are *disproportionate* to his conduct and to the danger he poses to the public, a finding the court must make under R.C. 2929.14(C)(4) before imposing consecutive sentences. The concern with the consecutive nature of Moore's sentence is, in fact, the thread that has run throughout the various appeals in the case. The only reason Moore received such a significantly longer sentence than Chaney is not because the terms on each individual count were longer, but because the court ran Moore's sentences consecutively while it ran Chaney's sentences concurrently. In both prior reversals by this court, we found issues

relating to the consecutive nature of Moore's sentences, even if not clearly enunciated. With our prior opinions being oblique on the consecutive sentencing issue, it is understandable that Moore might use incorrect phraseology. That error is of no consequence for it would serve no purpose for us to put form over substance in refusing to address what is obviously the primary issue on appeal.

{¶21} There are two ways that a defendant can challenge consecutive sentences on appeal. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2014-Ohio-2527, ¶ 16; *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 11 (8th Dist.). Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Nia*, *supra*.

{¶22} R.C. 2929.14(C)(4) gives a sentencing judge discretion to order an offender to serve individual counts of a sentence consecutively. The statute provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the

offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶23}** Moore's argument, at its core, is that the record does not support the court's finding that consecutive sentences are not disproportionate to his conduct and to the danger he poses to the public. In the prior appeal, our decision remanding this case for resentencing noted that the court failed to engage in a "proportionality" analysis.[5] *Moore* at ¶ 125. We found this failure problematic because the 33-year sentence given to Moore appeared out of proportion to Moore's conduct during the robbery, particularly when compared to Chaney's conduct. We elaborated at length as to how Chaney not only masterminded the robbery, but was the only one of the codefendants to carry a gun and use it to "terrorize" the victims. *Id*. at ¶ 118, 124. We noted that Ohio law favors much more severe punishment for those who carry a gun, and that while Moore was charged with a firearm specification as an accomplice (the firearm specification against Chaney was dismissed as part of his guilty plea agreement), the court appeared to lay Chaney's conduct at Moore's feet "simply because he was a difficult defendant who exercised his right to a jury trial." *Id*. at ¶ 125.

**{¶24}** When making its findings under R.C. 2929.14(C)(4), the court stated,

[B]ecause I do find that consecutive sentences are necessary to protect the public and to punish you, and, quite frankly, as I've indicated for all those reasons, I do not find it's disproportionate; you committed this crime while you were under sentence or awaiting trial for other cases. You did cause a significant amount of harm, certainly psychological harm to the ladies which is obviously very serious, and obviously you have a history, a criminal history prior to this offense and

---

[5]This language was imprecise — because the length of Moore's sentence was the result of the court ordering him to serve individual counts consecutively. Despite being imprecise, the prior opinion made it abundantly clear that our concern was with the overall length of time imposed by running Moore's sentences consecutively in the context of Moore's conduct.

subsequent to this offense that certainly indicates that consecutive terms are needed to protect the public.

Tr. 64.

{¶25} Regarding the court's statement, "I do not find it's disproportionate," similar language has been deemed sufficient to constitute a finding that consecutive sentences are not disproportionate to the seriousness of a defendant's conduct and to the danger he poses to the public. *See State v. Greene*, 8th Dist. Cuyahoga No. 100542, 2014-Ohio-3713, ¶ 6 (finding the statement, "it is not a disproportionate sentence," to be sufficient, but barely, under R.C. 2929.14(C)(4)).

{¶26} With the court having made the required findings under R.C. 2929.14(C)(4), we next consider whether the record does not support those findings.

{¶27} R.C. 2953.08(G)(2)(a) directs an appellate court "to review the record, including the findings underlying the sentence" and to modify or vacate the sentence "if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code."

{¶28} Moore has twice been sentenced to consecutive terms on a record that fails to show why consecutive sentences are not disproportionate to his conduct.[6]  Even the most recent sentence was imposed seemingly without any regard to our observation that the record was devoid of information to show why sentencing Moore to such a lengthy consecutive prison term would not be disproportionate to his conduct.

---

[6] In Moore's direct appeal from his conviction, this court reversed Moore's consecutive sentence and remanded to the trial court for resentencing because the trial court failed to find that consecutive sentences were not disproportionate to the seriousness of Moore's offense. *See State v. Moore*, 8th Dist. Cuyahoga No. 78751, 2002-Ohio-1831, ¶ 27-28.

{¶29} In *State v. Bonnell*, 140 Ohio St.3d 309, 2014-Ohio- 3177, 16 N.E.3d 659, the Ohio Supreme Court recently reiterated the fact that, although a trial court has no obligation to recite the language of R.C. 2929.14(C)(4) word-for-word before imposing consecutive sentences, or state its reasons to support its findings, all of the findings required by the statute must nonetheless be made and supported by the record. The court noted that "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶30} Without minimizing Moore's criminality, his consecutive sentences cannot be explained by his *conduct* during the commission of the offenses. The dissent argues that Moore's conduct in committing the crimes must be considered solely on its own and not in conjunction with Chaney's. In other words, it is fair game to hold Moore responsible for Chaney's actions in the commission of the offenses (i.e. bringing a gun to the scene and terrorizing the victims with it) but Moore's conduct should be viewed in isolation when evaluating whether consecutive service is not disproportionate. This is an illogical proposition. But, even if we were to consider Moore's conduct standing alone, the record still does not support the finding that consecutive sentences are not disproportionate to the seriousness of his conduct and the danger he poses to the public.[7]

{¶31} Often times, a trial court may impose a harsher sentence on a defendant upon conviction after a trial than one it may have imposed after a defendant pleads guilty because the court has the opportunity to learn more details about the crime. Details illuminated in Moore's

---

[7]Curious as to whether, by considering Moore's conduct alone, the dissent means for us to consider a scenario where an unarmed Moore robs the restaurant, tapes the feet and arms of one of the victims, reassures them that no one is going to get hurt, then absconds with the money.

trial, however, revealed information about his and his codefendant's conduct that were more favorable to Moore. Without going tit for tat with the dissent on the facts of this case and the dissent's mischaracterization of Moore's conduct, one of several excerpts from the trial transcript is telling. On direct examination by the state, one of the employees at the restaurant was asked:

> Q.  [C]an you characterize, in your own way, each of the two individuals that [sic] were conducting this robbery, at the time?
>
> A.  Yes. To differentiate the two, I called one the bad guy and one the nice guy.
>
> Q.  What did you mean by that?
>
> A.  What I meant by that, was the bad guy was the guy who had the gun up to my temple. And the nice guy is the guy — is when I asked him, please don't tape my face, he did not. And he also said that nobody was going to get hurt, and reassured us a little bit.

Tr. 875: 4-14 (vol. 4 of 8, Aug. 2, 2010).

{¶32} Viewing Moore's conduct in isolation as the dissent would have us do, may be one way to read R.C. 2929.14(C)(4), but doing so creates an artifical distinction that does nothing to advance the goals of the statute.

{¶33} As used in R.C. 2929.14(C)(4), the word "conduct" has significance apart from whether the defendant's acts established the elements of a particular crime. The dissent's approach would apparently base the disproportionality inquiry solely on the conduct establishing the elements of the offense. But that approach does nothing to evaluate the severity of the conduct as a basis for ordering sentences to be served consecutively and says nothing about how a sentence or punishment should be applied to that conduct. Had the legislature intended to limit appellate review to whether consecutive sentences are not disproportionate to the

seriousness of the crime itself (as opposed to the offender's conduct and the danger the offender poses to the public) it could have done so.

{¶34} Clearly, Moore and Chaney were equally culpable in committing the offenses, but their conduct was not equal. Witnesses at trial said as much. The commission of these crimes is certainly deserving of punishment, but the record does not support why Moore's conduct warranted consecutive sentences. The dissent finds it incongruous that Moore's conduct could be considered less severe or less dangerous than Chaney's. But the fact remains that Chaney was the only person who brought and brandished a gun; Chaney, not Moore, gagged and hogtied a victim: Chaney terrorized the victims by holding the gun to their heads and threatening to kill them. If the phrase of the consecutive sentences statute — "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" — is to have any meaning, it defies logic to conclude that the record in this case supports the imposition of consecutive sentences for Moore based on his conduct and the danger he poses to the public. Again without attempting to minimize Moore's involvement in committing the offenses, to act as if he was the more depraved offender when assessing proportionate punishment and the danger posed to the public — the inescapable conclusion drawn from who was sentenced consecutively and who was not — is not supported by the record.

{¶35} The dissent states that being "nicer" when committing an offense does not diminish the seriousness of an offender's conduct.[8] It does not for purposes of culpability, but in proper

---

[8] Interestingly, the dissents cites to a case, *State v. Elkins*, 6th Dist. Sandusky No. S-08-014, 2009-Ohio-2602, for the proposition that a court may arrive at a longer sentence for a codefendant despite similarity in backgrounds and relatively culpability in committing a crime. Other than calling attention to some similarity in criminal backgrounds Moore and Chaney may have, the dissent's reliance on this case is misplaced. First, culpability in committing the offenses is not an issue. As mentioned in the body of this opinion, Moore and

context, it must for purposes of assessing disproportionality of consecutive sentences. Simply put, it is a consideration of conduct.

{¶36} According to the victim in this case, being the "nice guy" meant that Moore did not have a gun pointed at her head, he did not tape up her face, gag and hogtie her, he reassured her that she and her coworker would not be hurt. The "bad guy," Chaney, was the mastermind of the crime. He brought the only weapon to the restaurant; he hogtied and gagged a victim: he held the gun to the victims' heads and threatened to kill them. Keeping in mind that the trial court is tasked with balancing the need to protect the public, using the minimum sanctions that accomplishes the overriding purposes of felony sentencing and without imposing an unnecessary burden on state or local governmental resources, the record does not support the trial court's imposition of consecutive sentences for Moore.

{¶37} It is not lost on us that Chaney pleaded guilty and reviewing courts recognize the potential benefits a defendant gains when entering into a plea deal, namely the hope for lenient punishment. *See State v. Patterson*, 2d Dist. Montgomery No. 15699, 1997 Ohio App LEXIS 1745 (May 2, 1997), citing *Corbitt v. New Jersey*, 439 U.S. 212, 221-224, 99 S.Ct. 492, 58 L.Ed. 466 (1978), and *Brady v. United States*, 397 U.S. 742, 752-753, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). But leniency in exchange for a plea alone cannot explain why the terrorizing gunman

---

Chaney are equally culpable for the crimes. Secondly, the *Elkins* case involved the defendant and several codefendants invading a home to commit a robbery, and beating a husband, wife, and their children causing them serious to severe injuries — a scenario much more heinous than the facts in this case. Fortunately, no one was physically harmed in the Hard Rock robbery. Last but not least, the dissent seems to rely on *Elkins* to justify Moore being sentenced to a longer prison sentence than Chaney. Indeed, throughout the opinion, the dissent states the majority opinion insists that "Moore's sentence must be less than Chaney's" and that, in our opinion, Moore's conduct compared to Chaney's "mandates he serve a lesser sentence." We do no such thing. This is an inaccurate reading of the majority opinion. Even with our resolution of the case, Moore's sentence does not become "less than Chaney's," it is actually two years more.

who was the mastermind of the crimes received a concurrent, nine-year prison term for his conduct and Moore received a consecutive sentence of 27 years. Nor should it.

{¶38} The sentencing transcript shows that Moore rejected a plea bargain in which he would have received a five-year sentence. *See* tr. 14, 21. While we do not suggest that Moore was entitled to the benefit of a bargain that he rejected, the five-year proposed sentence certainly suggests that the state considered Moore's conduct during the offenses to be significantly less egregious or less dangerous than Chaney's conduct.

{¶39} In our earlier opinion, we noted that Moore was a "difficult defendant who sorely tried the court's patience at every turn of the proceeding," *id*. at ¶ 121, but that behavior cannot justify the disparity between the sentences Moore and his codefendants received. A sentencing judge may consider a defendant's conduct during trial as a pertinent factor when imposing sentence, but that type of consideration generally involves conduct that rises to the level of criminal activity. *See, e.g.*, *State v. O'Dell*, 45 Ohio St.3d 140, 543 N.E.2d 1220 (1989), paragraph one of the syllabus ("When a sentencing judge is the same judge who presided over the defendant's trial, the fact that the defendant knowingly gave false testimony while under oath is a factor that may be considered along with other pertinent factors when imposing sentence."). In the most recent resentencing, a different judge presided, so it is unclear how that judge could base Moore's sentence on any trial conduct that the judge did not witness. In any event, being "difficult" is not a crime and even if it were, it would be irrational to suggest that Moore's difficult behavior during trial justified being sentenced to consecutive terms of incarceration.

{¶40} Although the court made findings necessary to order Moore to serve his sentences consecutively, we clearly and convincingly find that the record does not support the court's

finding that consecutive sentences are not disproportionate to the seriousness of Moore's conduct and to the danger he poses to the public. In *Bonnell,* the Supreme Court stated:

> On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court "to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code."

*Id.* at ¶ 28.

{¶41} Applying the law as written, we believe that this is the rare case in which an appellate court should exercise its authority under R.C. 2953.08(G)(2) to "reduce, or otherwise modify a sentence." As the dissent correctly notes, trial courts are free to measure and consider consecutive service under the appropriate statutes. But such freedom of consideration does not relieve appellate courts of their statutory obligation to review, to the best of their abilities, the propriety of consecutive sentences. Given the opportunity to demonstrate in the record that consecutive sentences are not disproportionate to Moore's conduct in light of the facts in this case, the trial court has been unable to do so. We therefore clearly and convincingly find that the record does not support the trial court's finding that Moore deserved consecutive sentences. We therefore modify Moore's sentence to order that he serve all counts but the firearm specification concurrently.

{¶42} Judgment modified.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's sentence is

reversed and modified. Case remanded to the trial court for execution of sentence consistent with this decision.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY IN PART AND DISSENTING IN PART:

{¶43} I concur in judgment only with the majority decision except for their handling of the consecutive sentence review, with which I dissent. The majority sua sponte concludes that Moore is actually challenging the facts underlying the trial court's consecutive sentence findings, when in fact Moore has maintained that his aggregate sentence was contrary to law because the trial court failed to consider consistency between Chaney's and Moore's sentences. For this reason, I must dissent.

{¶44} As the Ohio Supreme Court recognized, since *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, "the legislature has both continued to address practical problems and attempted to put the *Foster* genie back in the bottle when possible" citing *Bonnell*, 140 Ohio St.3d 309, 2014-Ohio- 3177, 16 N.E.3d 659. "But the complexity of this task has proved vexing, and Ohio's felony-sentencing scheme has now become so complicated that discerning the legislature's purpose in enacting any individual statute now approaches futility * * *." *State v. Amos*, 140 Ohio St.3d 238, 2014-Ohio-3160, 17 N.E.3d 528, ¶ 13. To this end,

until the legislature revamps the statutes, it may be time for the Ohio Supreme Court to provide some clear and concise interpretation of the existing felony sentencing process to stop the conflicting interpretations over terminology and end the countless resentencings that paralyze finality.

{¶45} If there was ever a case that should stand as a testament to the unworkable nature of Ohio's sentencing review process, it may be this one. The problem with Ohio's appellate sentencing review is that it reduces the process to nothing more than a "smell test" involving the terminological gymnastics of well-intentioned appellate panels, substituting their judgment for that of the trial courts. Until clarity is provided for both the felony sentencing process and the standard of appellate sentencing review, we as appellate courts should apply the written law and avoid second-guessing Ohio's trial judges.

{¶46} The fact that this is the fourth appeal to this court stemming from Moore's convictions for aggravated robbery and kidnapping, for a crime occurring in 2000, cannot be overlooked. In *Moore*, 8th Dist. Cuyahoga No. 95106, 2012-Ohio-1958 ("*Moore III*"), this court reversed Moore's 33-year prison term stemming from his convictions for one count of aggravated robbery and two counts of kidnapping, each with three-year firearm specifications. A majority of the panel in that case held that Moore's sentence was contrary to law because the trial court failed to consider whether the sentence was consistent with similarly situated offenders, reviewed pursuant to R.C. 2929.11(B). Moore's sentence was reversed in part, and the case was remanded to the trial court for the purpose of reviewing a presentence investigation report ("PSI"), considering the consistency of the sentence with similarly situated defendants, and determining the appropriate sentence.

**{¶47}** Upon that remand, the trial court imposed an eight-year prison term for each of the aggravated robbery and two kidnapping counts, decreasing the individual sentences from the original ten-year terms. The trial court imposed the three sentences consecutive to each other and consecutive to the mandatory three-year prison term for the firearm specification. Moore's cumulative sentence, therefore, was reduced from 33 years to 27 years.

**{¶48}** The only assignment of error[9] addressed by the majority provides:

> The trial court committed reversible error by disregarding the mandate of the Court of Appeals in the within cause, where this Court vacated the 33-year sentence previously imposed, remanded the case for resentencing, and directed the trial court to *conduct a proportionality analysis related to the sentences imposed on Appellant's codefendants and impose a sentence that was proportionate to the sentences meted out to his codefendants*.

(Emphasis added.) Moore is not challenging whether the facts support the trial court's undisputed findings necessary to the imposition of consecutive sentences. Nor could he.

I.     Proportionality versus consistency

**{¶49}** Moore has never challenged whether the facts supported the imposition of consecutive sentences after his 2010 retrial.[10] His sole argument against his aggregate term of imprisonment was that pursuant to R.C. 2929.11(B), Moore's "maximum" sentence was not consistent with Chaney's. In *Moore III*, after affirming the imposition of consecutive sentences under pre-H.B. No. 86 statutes, this court vacated Moore's sentence because the trial court failed to consider the proportionality of Moore's sentence as compared to Chaney's. *Moore III* at ¶ 111. This is problematic because it confused consistency review with that of proportionality.

---

[9]I would also overrule all of Moore's other assignments of error mooted by the majority's opinion based on the rationale set forth in *Moore*, 8th Dist. Cuyahoga No. 99788, 2014-Ohio-819.

[10]In fact, in Moore's first appeal following his 2000 conviction, this court reversed the imposition of consecutive sentences because the trial court failed to make the required findings. *Moore*, 8th Dist. Cuyahoga No. 78751, 2002-Ohio-1831, *27. On remand, the trial court remedied that omission. *See, e.g.,* tr. 50:22-25 (Mar. 11,

As the majority correctly identifies, however, consistency and proportionality are distinct concepts.

> A. Consistency among similarly situated offenders, not synonymous with the proportionality between a defendant's conduct and that defendant's sentence

**{¶50}** It is important to note that although courts have minced consistency in sentencing, pursuant to R.C. 2929.11(B), with the constitutional or statutory concept of proportionality derived from consecutive sentencing or the prohibition of cruel and unusual punishment review, proportionality is not a creature of R.C. 2929.11(B) consistency analysis, and vice versa. *See, e.g., State v. Martin*, 8th Dist. Cuyahoga No. 96834, 2012-Ohio-1633, ¶ 13 (citing *State v. Chaffin*, 30 Ohio St.2d 13, 17, 282 N.E.2d 46 (1972), an Eighth Amendment cruel and unusual punishment case, in reviewing a felony sentence for consistency). Moore seemingly conflated the two issues, but in arguing that his sentence was not "proportional" with Chaney's, he only invoked R.C. 2929.11(B).

**{¶51}** The concept of proportionality, referring to the shocking to the sense of justice in the community standard, under the cruel and unusual punishment analysis, or disproportionate to the offender's conduct standard set forth in R.C. 2929.14(C)(4) under consecutive sentencing review, focuses on the offender's own conduct as it relates to his crimes, and not to the sentences or conduct of other similarly situated offenders. *Chaffin* at paragraph three of the syllabus ("[a] punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community"); R.C. 2929.14(C)(4) ("court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the

2005).

public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct"). Consistency analysis, pursuant to R.C. 2929.11(B), focuses on an offender's sentence compared to that of a similarly situated offender, even assuming Chaney can be considered a "similarly situated offender."[11] This is an important distinction lost in the majority's analysis.

{¶52} The majority's rationale buys into Moore's sense of his own culpability during the crime, as if victims subjected to Moore's conduct should be no worse off because Moore was "nicer" than Chaney was when forcing their way, with a gun, into the safe room of the restaurant, ordering all the money after pressing the barrel of a handgun into the manager's temple, and Moore personally binding one of the victims to facilitate an escape after silently watching his accomplice hogtie and gag the other. According to the majority, this fact mandates that Moore serve a lesser prison sentence than Chaney.

{¶53} Other than noting the obvious, that Moore was sentenced to eight years on each of the three crimes for which Chaney received nine-year sentences, simply committing a smaller portion of the same crime does not render Moore's conduct, in and of itself, disproportionate to consecutive service of his shorter sentences. *See Elkins*, 6th Dist. Sandusky No. S-08-014, 2009-Ohio-2602, at ¶ 19 (despite similarity in backgrounds and relative culpability in the crime, the court considered the appropriate factors arriving at a longer prison sentence for one codefendant). Moore's relative culpability compared to a codefendant's is not part of the

---

[11]Whether Chaney or any codefendant is actually a similarly situated offender is subject to debate in light of the myriad of factors that a trial court may consider pursuant to R.C. 2929.11 and 2929.12. For the purposes of the current appeal, it suffices that Chaney was not a similarly situated offender in light of Moore's extensive history of dismissing his own responsibility. Chaney accepted responsibility for his actions in pleading guilty. Moore further had an extensive history of assault after his original 2002 conviction that was not part of Chaney's sentencing calculus. Tr. 37:16-38:19 (Apr. 8, 2013); tr. 1693:8-1695:8 (vol. 8 of 8, Aug. 2, 2010).

disproportionate review for imposing consecutive sentences. R.C. 2929.14(C)(4) is clearly written. The trial court may order sentences to be served consecutive to the other if, in pertinent part, "the court finds that the consecutive service is * * * not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). Nowhere in that standard is there any indication the legislature intended an extrospective inquiry. Being "nicer" than a codefendant in the commission of a crime does not diminish the seriousness of the offender's own conduct. Such a holding sets a dangerous precedent.

{¶54} The Ohio Supreme Court's decision in *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, is instructive on the differences between consistency and proportionality. The Ohio Supreme Court specifically overruled the defendant's argument that his 134-year consecutive sentence — imposed on the defendant's guilty plea to four counts of aggravated robbery, three counts of aggravated burglary, four counts of kidnapping, all with firearm specifications, and three counts of having a weapon while under disability — was "grossly disproportionate to the totality of his crimes." *Id.* at ¶ 15. In so holding, the court determined that "proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed [to be served] consecutively." *Id.* at ¶ 20.

{¶55} This court has applied the proportionality view espoused by the *Hairston* court to consecutive sentencing review. *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 114. When reviewing proportionality, the focus should be on the individual sentences, not the cumulative prison sentence ordered to be served through R.C. 2929.14(C)(4).

{¶56} Logic dictates that Moore's reliance on Chaney's sentence as evidence that Moore's sentence is disproportionate to his own conduct is misguided at best, even if such a

comparison were permissible within the guidelines of consecutive sentencing. Ohio's notion of consecutive sentencing inherently focuses on the individual's conduct as it relates to that individual's sentence. In effect, the majority disagrees with the trial court's findings and the imposition of consecutive sentences, and contorts the proportionality review into one guided by Chaney's cherry-picked, low-end sentence.

{¶57} The majority compared Chaney's conduct to that of Moore's during the commission of the crime, and concluded that Moore's sentence must be less than Chaney's in light of the alleged disparity in their conduct. In fact, the majority's sole basis for overturning the consecutive service of Moore's sentences rests with their conclusion that being "nicer" in the commission of the heinous and extremely personal, invasion-type crime, "must" necessarily diminish the seriousness of Moore's conduct for the purposes of consecutive sentencing. The majority not only inappropriately injected the R.C. 2929.11(B) consistency in sentencing analysis into the disproportionate finding of consecutive sentencing but then compares uncomparable sentences.

### B. Apples-to-oranges comparison of sentences

{¶58} Moore continually claims that a trial court imposed a nine-year sentence of imprisonment on Chaney for the same three crimes for which Moore was sentenced. I cannot agree with that proposition, which compares Moore's final prison sentence to be served — imposed through running the individual sentences consecutively — to half of Chaney's sentence, running the same three counts concurrently. In doing so, Moore ignores the fact that Chaney's nine-year concurrent terms for the three offenses related to Moore's case, were specifically ordered to be served consecutive to a ten-year sentence Chaney was then already serving on an unrelated case — meaning Chaney's sentence on the same three charges was not to commence

until Chaney served the prior term that was left undisturbed by any appeal. As the Ohio Supreme Court indicated in *Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, proportionality reviews the individual sentences and does not incorporate the ultimate prison sentence served via R.C. 2929.14(C)(4).

{¶59} Nevertheless, it appears Chaney agreed to a global resolution of all his then-pending cases through a plea deal. *See State v. Chaney*, 8th Dist. Cuyahoga No. 80496, 2002-Ohio-4020, at ¶ 1. In essence, Chaney was ordered to serve a term of 19 years by virtue of the trial court's running the sentence consecutively to the unrelated ten-year sentence. *Id.* at ¶ 3 (Chaney appealed the consecutive nature of his sentence for the Hard Rock Café robbery, leading to what this court described as a 19-year sentence). The trial court acknowledged as much at Moore's umpteenth resentencing. Tr. 30:12-20 (Apr. 8, 2013). Other than an exercise in semantics, if the trial court imposed a 19-year term of imprisonment on Chaney for the three crimes, by ordering consecutive service of the three crimes to be served concurrent to the unrelated cases, we would not be having this discussion.[12]

{¶60} In fact, in light of Moore's decade-ensuing litigation over Chaney's quixotic sentence, it may have been a better approach to impose consecutive sentences among the three applicable counts in Chaney's case, and run that concurrent to the unrelated cases. Trial courts dealing with codefendants and multi-count convictions should be wary of this problem. Nevertheless, Chaney's sentence is of no import for the purposes of Moore's appeal.

{¶61} Moore wishes to review his aggregate sentence with that of Chaney's individual sentences of nine years, for which Moore received eight-year sentences, in a vacuum. The fact

---

[12]It should be noted that combining sentences through the imposition of consecutive sentences is not violative of *Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, as long as the individual sentences are

that the trial court in Chaney's case considered all of his other or prior cases is no different than the trial court considering Moore's history for the purposes of imposing consecutive sentences. Although trial court judges impose individual sentences for specific counts in various cases, they are free to measure and consider consecutive service under the appropriate statutes; and when reviewing sentences, we cannot discount the true nature of the prison terms being served. Doing so would raise the risk of inconsistency in sentencing because courts would look at isolated sentences not encompassing the offender's prison time being served. Chaney's sentences, even if considered in a vacuum to be a nine-year term of imprisonment for the three crimes, was an outlier, and Moore cannot take advantage of that fact.

{¶62} The majority decision incorrectly predicated the modification of Moore's sentence upon the propriety of imposing consecutive sentences by injecting the concept of consistency of sentences derived from R.C. 2929.11(B) into the concept of proportionality. For this reason alone, Moore's conviction should be affirmed in its totality.

{¶63} Nevertheless, even if one were to accept the possibility of sua sponte converting Moore's arguments, to the extent of deeming his haphazard invocations of proportionality as challenges to the consecutive nature of his sentences, they are wholly without merit.

---

properly imposed.

II. It cannot be clearly and convincingly found that the record does not support the finding that Moore's conduct was disproportionate to his sentence

**{¶64}** Moore's aggregate sentence of 27 years is predicated on running his sentences for the individual counts consecutive to each other; and therefore, any concept of proportionate sentencing is inherently derived from either the consecutive sentencing review established by R.C. 2953.08 and 2929.14(C)(4) or the constitutional prohibition against cruel and unusual punishment, as determined by the Ohio Supreme Court in *Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073. Neither Moore nor the majority addressed the cruel and unusual punishment issue.

**{¶65}** An appellate court cannot statutorily overturn consecutively imposed sentences, pursuant to the scheme provided in R.C. 2929.14(C)(4), unless the trial court failed to make the required findings or the defendant demonstrates that the findings are not clearly or convincingly supported by the record. R.C. 2953.08(G)(2) expressly provides that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Further, courts must review the entire record to determine whether "the record does not support the sentencing court's findings." R.C. 2953.08(G)(2). The record incorporates more than just the sentencing transcript.

**{¶66}** In reviewing the entire record in this case, it is undisputed that Moore provided the court with the information regarding his relative culpability for the crime before Moore was sentenced. The trial court — not sitting on the bench during Moore's first or second trial — reviewed the PSI, the facts of the case, Moore's extensive history of violent misconduct subsequent to the guilty verdict, and Moore's inability to take responsibility for his actions. The trial court also detailed at length Moore's felony criminal history and noted that through several

cases pending subsequent to the 2000 Hard Rock Café robbery, Moore could have received 16 years of prison sentences separate and apart from any sentence meted out in the current case. Instead, the trial court ordered those cases to be served concurrent to Moore's current 27-year term of imprisonment. All these factors must be considered in determining the appropriateness of imposing the sentences to be served consecutively.

{¶67} Even if Moore's haphazard incantations of proportionality, advanced in support of his consistency in sentencing arguments, can be construed under the consecutive sentencing framework, the facts contained in the record support the trial court's undisputed findings. Moore participated in the robbery and bound one of the victims, after silently witnessing his accomplice hogtie and gag the other. *Moore III* at ¶ 2. Further, in the process of procuring the money from the safe, with the barrel of the handgun pressed into her temple, the manager of the restaurant handed Chaney the paper bills. Moore himself demanded the coins be included in their take after swapping places with Chaney. *Moore*, 8th Dist. Cuyahoga No. 78751, 2002-Ohio-1831; tr. 1673:1-3 (vol. 8 of 8, Aug. 2, 2010). Chaney told the manager to avoid the change originally. Tr. 864:18-22 (vol. 4 of 8, Aug. 2, 2010).

{¶68} According to the sentencing hearing held in 2010 after the retrial, Chaney then exited the safe room, leaving Moore to finish collecting the money and restraining the manager in facilitation of the getaway. Moore also understood how dangerous Chaney really was, telling the manager that Chaney was not "playing" and would hurt the victims if they did not comply with all the demands. Tr. 1673:4-8 (vol. 8 of 8, Aug. 2, 2010). The trial court specifically found that in light of the facts of the extensively planned, violent invasion-type robbery, and because the victims were traumatized specifically by Moore — psychologically harmed even ten years later — that Moore's conduct was not disproportionate to the consecutive sentences or the

danger he posed to the public — as also demonstrated by Moore's extensive criminal history including several assault charges.   Tr. 1691:20-24 (vol. 8 of 8).

{¶69} The trial court found, for the second time as explained in footnote 2 of this dissent, that Moore's actions were not disproportionate to consecutive sentences.   Tr. 1694:17:23 (vol. 8 of 8).   Upon remand following the *Moore III* decision, the trial court again found that Moore's conduct was not disproportionate to consecutive sentences.   Tr. 64:10-23 (Apr. 8, 2013).   Further, unlike Chaney who pleaded guilty, Moore persisted in specifically abdicating any responsibility for his actions even after being found guilty on multiple occasions and actually confessing to the crime.   Tr. 1683:18 (vol. 8 of 8), 56:21-57:6 (Apr. 8, 2013).   On these facts alone, I cannot say the findings are clearly and convincingly unsupported by the record.

{¶70} Moore's conviction should therefore be sustained in its entirety.

III.      Inapplicability of the Law of the Case Doctrine

{¶71} Unrelated to the majority opinion, I must address Moore's claim that the trial court ignored the directive of this court in *Moore III* by failing to engage in a consistency analysis pursuant to R.C. 2929.11(B).   Again, although this court and Moore spoke in terms of proportionality in *Moore III*, the inquiry was into the consistency of sentences because of Moore's singular reliance on R.C. 2929.11(B).   Moore reads more into our prior decision than is permissible.

{¶72} "The [law of the case] doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."   *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).   In *Moore III*, a panel on this court reversed Moore's sentence specifically because although "[t]he trial court justified its disparate treatment of Moore by referring to his

lengthy criminal record[,] * * * the appellate record [did] not contain the specifics of Moore's criminal record as compared to that of Chaney." (Emphasis added.) *Moore III* at ¶ 122-123.

**{¶73}** Accordingly, that panel reversed Moore's sentence and remanded for the sole purpose of reviewing whether Moore's sentence was consistent with Chaney as a similarly situated offender. *Id.* at ¶ 129-130. Further, that panel specifically noted that the trial court's failure to undergo any consistency analysis limited the scope of review. *Id.* at ¶ 125. The only issue to be resolved on remand was whether a sentence imposed upon Moore was consistent with sentences meted out to Chaney as a "similarly situated offender." The trial court undertook this analysis, supplemented the record with information regarding Moore's criminal history, and reduced Moore's aggregate sentence by six years. As it stands, the purpose of the remand was for the court to undertake the necessary analysis omitted from the sentencing and no more. The law of the case doctrine is inapplicable. The dictates of *Moore III* were followed, and Moore benefitted through a reduction in his aggregate sentence.

IV.     Consistency in sentencing, an elusive concept that appellate courts are unable to review

**{¶74}** Although I agree with the majority's disposition with regard to the consistency review pursuant to R.C. 2929.11(B), I must write separately to clarify the need for change in our sentencing statutes, a call to action seemingly unheeded over the last decade. *See State v. Moore*, 8th Dist. Cuyahoga No. 89779, 2008-Ohio-2365 (S. Gallagher, J., concurring), ¶ 33-37 (identifying the tension between consistency and judicial discretion that a soft-grid or tiered felony sentencing system could alleviate). In light of the myriad of factors intertwining to form the final sentence, the legislature specifically adopted a standard that leaves no possible appellate review of consistency of sentences. No court could review another court's sentencing decision

for the purposes of determining whether the sentences meted out were consistent with sentences of other similarly situated offenders.

{¶75} In other words, the court's consideration of all the sentencing factors may justify disparate sentences of similarly situated codefendants when the sentence is within the statutory ranges. In Ohio, this statutory goal of consistency has never been interpreted to mean that codefendants must receive equal sentences or sentences in proportion to their own sense of culpability. *Foster* at ¶ 100. Disparate sentences between codefendants do not render either sentence contrary to law. *State v. Georgakopoulos*, 8th Dist. Cuyahoga No. 81934, 2003-Ohio-4341, ¶ 26. Consistency among similarly situated offenders is a goal of felony sentencing, and more important, consistency review cannot be isolated to a single offender. By its nature, the goal is consistency among all offenders, not consistency with a single offender. "The legislature's purpose for inserting the consistency language contained in R.C. 2929.11(B) [was] to make consistency rather than uniformity the aim of the sentencing structure." *State v. Harder*, 8th Dist. Cuyahoga No. 98409, 2013-Ohio-580, ¶ 7, citing Griffin and Katz, *Ohio Felony Sentencing Law* (2001), 59.

{¶76} For those who find the apparent disparity between Moore's and Chaney's sentencing ranges unpalatable, the root of the problem is in the statutory construction. The Ohio Supreme Court noted that the legislature, in providing trial courts with the broad discretion to sentence offenders within certain sentencing ranges, curtailed the attainment of limiting disparities in felony sentencing. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100. Practical realities reflect this notion. There are well over 200 common pleas judges of the general division in Ohio meting out felony sentences. An additional 68 appellate judges sit on panels of three to review these sentences. Consistency in felony sentencing cannot coexist

with judicial discretion in sentencing within the ranges provided by the legislature even with the ability of reviewing the imposition of sentences under an abuse of discretion or de novo standard of review.

{¶77} For example, if the trial court sentences an offender within the guidelines and expressly considers all the statutory sentencing factors, no appellate court could overturn the sentence on consistency grounds. Any overruling of a sentencing decision would be a de facto determination that based on the particular facts of the case, through an abuse of discretion or a de novo review, that the offenders are not similarly situated or other sentencing factors should be weighed heavier to warrant a lighter sentence. R.C. 2953.08(G)(2) expressly prohibits this type of "meaningful" review. It is not in the province of an appellate court to create a standard of review solely because the legislature prohibited any "meaningful" review.

{¶78} Moore's entire argument rests on the presumption that his codefendant received a nine-year sentence for the same three offenses that culminated in Moore's sentence of 27 years. The trial court must consider all sentencing factors, and not just the defendant's own sense of culpability for the crimes committed as compared to any codefendants. *Moore*, 8th Dist. Cuyahoga No. 89779, 2008-Ohio-2365, ¶ 20. This is not to say that an offender's culpability is not a factor to be considered in sentencing; rather, it is the recognition of the commonsensical notion that no one factor can override all other sentencing factors pursuant to R.C. 2929.11 and 2929.12.

V.    Conclusion

{¶79} In this case, the trial court considered all relevant factors to sentencing, was specifically made aware of Moore's codefendants' sentences, including Chaney's, and imposed a sentence within the statutory ranges. Moore's sentence is not, and cannot be deemed to be,

contrary to law. Moreover, on remand, the trial court undertook the appropriate consistency review, and any proportionality claims, especially in regard to either the consecutive sentences or the constitutional prohibition against cruel and unusual punishment, were forfeited in light of Moore's failure to timely advance any such claim in this appeal. Moore's sentence should be affirmed.